IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN A. LOCKETT, SR., :
:
    Plaintiff :
: CIVIL NO. 3:CV-08-1643
  v. :
: (Judge Caputo)
WARDEN DOMINICK DEROSE, :
:
    Defendant :

**M E M O R A N D U M**

**I.   Introduction**

The pro se plaintiff, Shawn A. Lockett, Sr., filed this civil-rights action arising from his imprisonment at the Dauphin County Prison (DCP) in Harrisburg, Pennsylvania. The sole named defendant is DCP Warden Dominick DeRose. Plaintiff makes the following civil rights claims: (1) an Eighth Amendment medical claim; (2) a conditions of confinement claim related to his placement in "lock down" from May 29, 2008 through August 14, 2008; (3) a Sixth Amendment denial of access to courts claim; (4) a Due Process claim in connection with his receipt of a false misconduct for his alleged involvement in a June 16, 2008, event; and (5) an excessive use of force claim after prison officials used pepper spray on him and others to quell a disturbance. (Doc. 1, Complaint.) Lockett claims all the events he experienced, and which he sues, "was all order by the Warden Dominick DeRose." (*Id*.)

Warden DeRose filed a motion to dismiss based on Lockett's alleged admitted failure to exhaust his administrative remedies, failure to state a claim, and

Lockett's failure to allege the personal involvement of Warden DeRose in any of the alleged violations of his constitutional rights. (Doc. 13, DeRose's Brief in Support of his Motion to Dismiss.) As Lockett has filed an opposition brief (doc. 15), and Warden DeRose has filed a Reply Brief (doc. 17). The motion is now ripe for disposition.

For the reasons that follow, Warden DeRose's Motion to Dismiss will be granted.

**II.     Background**

On May 29, 2008, while housed at DCP, Lockett was placed in "lockdown" along with other inmates after none of them would disclose to DCP official who was involved in the fight that took place on their housing unit. (Doc. 1, Complaint.) While in lockdown status, Lockett, and other inmates, were not permitted to attend church or visit the law library. (*Id*.) On June 16, 2008, some inmates in protest for their continued lock down status "didn't lock back in". (*Id*.) DCP staff then rushed the unit and "pepper sprayed everyone." (*Id*.) Lockett states that all the inmate's personal property, including their legal property, was then confiscated by prison officials. Water to their cells was turned off for a 24 hour period, and mail service was also stopped. (*Id*.) Lockett was unable to brush his teeth or shower for the next eight days. (*Id*.) Plaintiff also claims he was not given clean bedding or clothes during this period. (*Id*.) Mail services resumed to inmates, including Lockett, on July 3, 2008. (*Id*.) Hot meals, instead of bag lunches, were served again as of July

9, 2008. (*Id.*) Lockett states he did not "get [his] belonging[s] back until July 10,[20]08." (*Id.*) However, Lockett's "legal work was thrown away," and he was denied access to the law library and his lawyer for an unspecified period of time. (*Id.*) The prison "with held (sic) [Lockett's] legal mail and for over a month couldn't call or write to [his] family". (*Id.*) Clean uniforms were not distributed until July 23, 2008. (*Id.*) Additionally, Lockett, a diabetic, avers that he "got sicker do (sic) to the way [he was fed]" while in lockdown. (*Id.*) "This things was all order by the Warden Dominick DeRose." (*Id.*) Lockett received a "write up for what happen on June 16, [20]08 and [he] was not part of the disturbance on that day ... [he] appeal[led] the write up and it was denied by the Warden." (*Id.*) As relief, Lockett seeks to Court to launch an investigation into the events that transpired at the DCP between May 29, 2008 and August 14, 2008. (*Id.*) Plaintiff also seeks $50 million dollars in compensation for the above listed violations of his constitutional rights. (*Id.*)

Lockett signed his Complaint under penalty of perjury on July 28, 2008. (*Id.*) He claims that while there is a grievance procedure available at DCP, and that he filed a grievance concerning the facts relating to this complaint, he did not complete the grievance process. (*Id.*) The Court notes that Lockett originally filed his Complaint with the Court of Common Pleas of Dauphin County, Pennsylvania. (*See* Doc. 1-2). By Order dated August 26, 2008, the case was transferred to this Court. (*Id.*) After this Court directed original service of the Complaint, Warden DeRose waived service of the Complaint on October 19, 2008. (Doc. 10, Waiver.)

## III. Standard of Review

Under Rule 12(b)(6), we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from the allegations in Plaintiff's favor. *See Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007)(quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Marangos v. Swett*, No. 08-4146, 2009 WL 1803264 (3d Cir. June 25, 2009)(citing *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 120 S.Ct. 1937, 1949-1950, ___ L.Ed.2d. ___ (2009)). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must contain enough "facts to state a claim to relief that is plausible on its face" (*Id.*, 550 U.S. at 570, 127 S.Ct. at 1974) and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed. 929 (2007)(internal citations omitted); *accord Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1953. The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me accusation." (*Id.*, ___ U.S. at ___, 120 S.Ct. at 1950 (internal quotations and citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*, ___ U.S. at ___, 120 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965)).

## IV. Discussion

On November 26, 2008, Warden DeRose filed a motion to dismiss, based in part, on Lockett's alleged failure to exhaust his administrative remedies. (Doc. 12, Motion to Dismiss.) As the Plaintiff's failure to exhaust his claims, is a necessary prerequisite for maintaining this lawsuit, the Court will address this claim alone its resolution dispenses with the necessity to address the alternative grounds raised by the Defendant in support of his motion to dismiss.

### A. The Prison Litigation Reform Act's Exhaustion Requirement.

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e; *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002). "[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007).

The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.C. 2378, 2383, 165 L.Ed.2d 368 (2006). This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*) Additionally, the PLRA "completely precludes a futility exception to its mandatory exhaustion

requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

A prisoner, however, need not exhaust every administrative remedy, only those which are available to him. *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *accord Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002). "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be pleaded and proven by the Defendant. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). In *Ray*, the Third Circuit Court of Appeals held that while exhaustion is an affirmative defense, it may be raised in a motion to dismiss when there is an insuperable barrier to recover and where a plaintiff-prisoner can explicitly see their failure to exhaust. (*See Ray*, 85 F.3d at 295, n. 8.)

**B.    Lockett's Administrative Remedy Efforts at DCP.**

Lockett filed his Complaint on July 28, 2009. (Doc. 1-1, Complaint at p. 5.) He admits in his Complaint that a grievance procedure existed at the DCP at all times relevant to the Complaint, that he filed a grievance concerning the facts relating to his Complaint, but that he did not complete the grievance process. (*Id.* at p. 2.) In response to Warden DeRose's assertion that the Complaint should be dismissed due to Lockett's failure to exhaust his available administrative remedies

as evidenced by the admissions contained in Lockett's Complaint, the Court view's Lockett's opposition response as inconsistent with the facts asserted in his Complaint, and supportive of granting Defendant's motion.

In his opposition brief, Lockett states that:

> I did put in grievances and it was no responds back from the warden. Also let itbe (sic) known after June 16th, 2008, all my belongings was took from me and the other inmates as well. So there was no way for me to follow up with the grievances I put in. By not having any paper or anything to write with how could I put in anymore.

(Doc. 15, Opposition Brief at p. 1.) As noted, on a motion to dismiss the Court must take the facts alleged in the Complaint as true. The following factual allegations are assumed true for the purpose of resolving Defendant's motion to dismiss: (1) following the June 16, 2008, incident at DCP, Lockett's personal items were confiscated, but returned to him on July 10, 2008; (2) Lockett received a "write up" sometime after June 16, 2008, but sometime before he filed his Complaint; (3) he was able to appeal the "write up" to Warden DeRose sometime after receiving it and before filing his Complaint; and finally, (4) Lockett received a written response from Warden DeRose regarding his appeal before initiating this action. These facts appear at odds with Lockett's position that Warden DeRose did not respond to his administrative remedies, and that "there was no way for [him] to follow up with the grievances [he] put in" as he did not possess the physical means to file an appeal or grievance after June 16, 2008, and before he filed his Complaint. (Doc. 15.) Clearly, if Lockett was given a "write up" for the events that occurred on June 16, 2008, and was able to "appeal" the matter to Warden DeRose, who responded to it

-7-

in writing prior to July 28, 2009, the filing date of the Complaint, Lockett has not supported his assertion that DCP officials interfered with his ability to file a grievance, or that he lacked the ability to file a grievance related to Defendant DeRose's failure to respond to his allegedly properly filed grievances. Lockett's opposition to Warden DeRose's affirmative defense that Plaintiff did not exhaust his administrative remedies prior to initiating this action cannot overcome the allegations of the Complaint. As such, we will grant Warden DeRose's Motion to Dismiss based on Lockett's failure to exhaust his available administrative remedies before filing his complaint and dismiss the Complaint without prejudice. See *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

    We will issue an appropriate order.

                      **/s/ A. Richard Caputo**
                        **A. RICHARD CAPUTO**
                        **United States District Judge**

**DATED: July 13, 2009**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN A. LOCKETT, SR., :
:
   Plaintiff :
: CIVIL NO. 3:CV-08-1643
  v. :
: (Judge Caputo)
WARDEN DOMINICK DEROSE, :
*et al.*, :
:
   Defendants :

# O R D E R

**AND NOW,** this **13th** day of **July, 2009,** for the reasons set forth in the accompanying Memorandum, IT IS ORDERED THAT:

   1.   Defendant's Motion to Dismiss (doc. 12) is **GRANTED**.

   2.   The Complaint is **DISMISSED** without prejudice.

   3.   Based on our resolution of Defendant's Motion to Dismiss, Lockett's unbriefed Motion for Summary Judgment (doc. 25) will be **DISMISSED** as moot.

   4.   The Clerk of Court shall close this file.


                                     **/s/ A. Richard Caputo**
                                     **A. RICHARD CAPUTO**
                                     **United States District Judge**